**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **STEVEN RAY NELSON,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:06-CV-0642-M** |
| | § | |
| **NATHANIEL QUARTERMAN, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| **Respondent.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This cause of action was referred to the United States Magistrate Judge pursuant to the

provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court

for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the

United States Magistrate Judge are as follows:

## I. BACKGROUND

**A. NATURE OF THE CASE**

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

**B. PARTIES**

Petitioner Steven Ray Nelson, TDCJ-ID #1130776, is a state prisoner in custody of the

Texas Department of Criminal Justice, Correctional Institutions Division, in Dalhart, Texas.

Respondent Nathaniel Quarterman is the Director of the Texas Department of Criminal

Justice, Correctional Institutions Division.

**C. FACTUAL AND PROCEDURAL HISTORY**

In 2002, Nelson was charged by separate indictments in the 382nd District Court of

Rockwall County, Texas, with two counts of aggravated assault on a public servant with a

deadly weapon and one count of tampering with physical evidence in Cause Nos. 2-02-206, 2-02-207 & 2-02-208.  (1Clerk's R. at 4; 2Clerk's R. at 4; 3Clerk's R. at 4).[1]

At trial, the state's evidence reflected that after State Trooper Kevin Cauley and other law enforcement officers traced a call from a suspect in an unrelated criminal incident to a pay phone at the entrance location of Lakeside Village, a gated residential subdivision in Rockwall, they searched the area.  (5RR at 8-11).  Nelson and his wife drove into the entrance very slowly, looked at the officers, and then looked down immediately.  (4RR at 24, 27).  Trooper Cauley thought perhaps Nelson was there to pick up the subject of the manhunt, and he and Sheriff's Deputies Sergio Reyes and Eddie Edwards approached the car.

At that time, Nelson attempted to back out and leave, but stopped and put the car in park when Trooper Cauley directed a light into the passenger side window.  (4RR at 24, 150).  Upon questioning, Nelson told the trooper that he was looking for a motel.  (4RR at 28, 86).  Trooper Cauley then saw Nelson reach down and pick up what appeared to be several rocks of crack cocaine or methamphetamine and swallow them.  (4RR at 28-33, 152).  Nelson's wife tried to put the passenger window up, but Trooper Cauley grabbed the window and opened the door. (4RR at 30)  He then saw Nelson swallow a small plastic baggie containing what appeared to be a white, powdery substance, and a larger baggie containing what appeared to be a green, leafy substance.  (4RR at 28-29, 33, 106, 108, 269).

Reaching across Nelson's wife, the trooper grabbed Nelson around the neck and commanded him to stop and get out of the vehicle.  (4RR at 33).  Nelson's wife began screaming

---

[1]"1Clerk's R." refers to the clerk's record in trial court cause no. 2-02-206; "2Clerk's R." refers to the clerk's record in trial court cause no. 2-02-207; and, "3Clerk's R." refers to the clerk's record in trial court cause no. 2-02-208.

and hitting Trooper Cauley. (4RR at 34-35, 39-40, 112, 116, 156). Deputy Reyes entered the driver's side of the car. (4RR at 34-35). Instead of complying with the officers' commands, Nelson began screaming and striking at the officers as if he were "possessed." (4RR at 200). The officers hit Nelson with hard blows to the throat, body, and jaw. (4RR at 38, 154). As the struggle ensued, Nelson yelled, "No, no, I can't go back. F--- you, f--- you. I can't go back." (4RR at 39, 114, 225, 257). Nelson continued to resist, and Trooper Cauley began to give him "stunning blows" to the head, torso and jaw. (4RR at 39-40, 109, 115).

Sheriff's Deputies Bobby Burks and Hank Havens joined in the melee, and they attempted to pull Nelson from the car by his head. (4RR at 223-26). The officers heard the engine rev, but the car did not move. (4RR at 40). The engine revved again, one of the Nelsons' hands came up, and the car began to roll backwards; it jolted and Nelson then punched the gas as hard as he could. (4RR at 41-45, 104, 157, 213, 259-61). Trooper Cauley was caught and dragged under the car for thirty-five to forty feet, and the front tires ran over his legs. (4RR at 46-54). Deputy Reyes was also dragged and lay motionless on the road. (4RR at 55-56, 64). Sheriff's Deputies Burke and Havens were struck by the doors but eventually rolled free of the car. (4RR at 227, 260-64). After the car stopped, Deputy Havens drew his weapon to shoot Nelson, but he could not get a clear shot. (4RR at 263). He and Deputy Burks approached the car, struggled with Nelson and finally pulled him from the car, though he continued to resist. (4RR at 264). One of the deputies punched and hit Nelson with his service revolver, and the officers eventually handcuffed and subdued him. (4RR at 56, 59, 229-34, 242, 264-66). Trooper Cauley crawled to his car and radioed for help. (4RR at 57-58, 61, 231).

At the hospital, Nelson told a nurse that this wife put the car in reverse and told him to

"floor it," but the nurse did not write the remark in her notes. (5RR at 65, 211-12) She did note, however, that Nelson said, "They're trying to kill me and I didn't do it. They did." (7RR State's Exh. 24). Nelson had been beaten and sprayed with mace during the altercation and appeared disheveled and remorseful. (5RR at 76, 78). Nelson admitted to having taken some illegal substance, and a chemical analysis of his urine was positive for cocaine and amphetamines. (5RR at 79-80, 90; 7RR State's Exh. 23). Trooper Cauley and Deputy Reyes suffered serious injuries as a result of the incident. (4RR at 64-68, 126-27). Law enforcement officers seized a crack pipe and two knives but no drugs from Nelson's car. (4RR at 136-37). The items Nelson put in his mouth were lost or destroyed. (4RR at 69).

According to the Nelsons' version of events at trial, Nelson bought some rock cocaine on the night in question, and he and his wife were looking for Motel 6 near Highway 30 and Garland Road. (5RR at 93-98, 178). Nelson was lost, and he pulled into a parking space next to one of the officer's cars at the complex entrance to turn around. (5RR at 98-99, 208). As he was reversing out of the parking spot, the officers approached the car, and Trooper Cauley tapped on the window. (5RR at 100, 130). Nelson applied the brake but did not put the car in park, and his wife rolled down the window. (5RR at 100, 188). Nelson believed he had smoked all of the rock cocaine, but when Trooper Cauley directed his light into the car, he saw the cigarette wrapper that he had used as a baggie. He thought it might contain residue and swallowed it. (5RR at 97-101, 113, 126).

At that point, Trooper Cauley came through the passenger side window and began hitting Nelson and grabbing his mouth and neck, choking him. (5RR at 100, 156, 160, 182-83, 85). Other officers entered the driver's side door and began attacking Nelson and grabbing him

around the head and neck, choking him until he passed out. (5RR at 102). Nelson did not resist or try to hit the officers. (5RR at 141-42, 186-87, 201). He regained consciousness after hitting his head on the concrete when he fell partially out of the car as it accelerated backwards, and he pulled himself back into the car. (5RR at 145-48). When the car stopped, Nelson lost consciousness again. (5RR at 104). When he regained consciousness, an officer said to him, "You just tried to kill five cops. Say your prayers, mother f-----." *Id.* The officers beat Nelson, threatened to kill him if he moved, and sprayed him with mace. (5RR at 111-12, 141). He was heard on the 911 tape recording asking for help and begging the officers for mercy. (5RR 27, 192). Nelson would have cooperated with the officers, but he could not spit out the baggie he had already ingested. (5RR at 113). Nelson denied any involvement by his wife, ever saying "I can't go back," resisting the officers, or intentionally accelerating the car backwards. (5RR at 108, 122, 148-49, 195, 209). Trooper Cauley visited Nelson in jail and told him he would see that Nelson "did 50." (5RR at 163).

On November 7, 2002, a jury found Nelson guilty of two counts of aggravated assault on a public servant with a deadly weapon and one count of tampering with physical evidence and assessed his punishment at 18 years' confinement for each aggravated assault charge and ten years' confinement for the tampering charge. (1Clerk's R. at 239; 2Clerk's R. at 220; 3Clerk's R. at 102).

Nelson appealed each conviction, but the Second District Court of Appeals of Texas affirmed the trial court's judgments, and the Texas Court of Criminal Appeals refused Nelson's petitions for discretionary review. *Nelson v. Texas*, Nos. 05-02-01917-CR, 05-02-01918-CR & 05-02-01919-CR, slip op. (Tex. App.–Dallas Jan. 6, 2004) (not designated for publication);

*Nelson v. Texas*, PDR Nos. 241-04, 242-04 & 243-04.  Nelson also sought postconviction state habeas relief.  He filed three state habeas applications (one for each conviction), but they were dismissed by the Texas Court of Criminal Appeals because his direct appeals were still pending. *Ex parte Nelson*, Application Nos. WR-60,848-01, WR-60,848-02 & WR-60,848-03, at cover. Subsequently, Nelson filed three more state habeas applications (one for each conviction) that were denied without written order by the Texas Court of Criminal Appeals.  *Ex parte Nelson*, Application Nos. WR-60,848-04, WR-60,848-05 & WR-60,848-06, at cover.  *See also* state court case information, *available at* http://www.cca.courts.state.tx.us.  This federal petition for habeas relief followed.

**D. ISSUES**

Nelson raises the following claims:

1.      There was no probable cause for the initial stop (ground one);

2.      A urine sample was obtained illegally by medical personnel (ground two);

3.      The state used, and the trial court erred by allowing, perjured testimony to obtain the convictions (grounds three and eleven);

4.      He received ineffective assistance of trial counsel (grounds four, six, eight, ten, twelve, fourteen, sixteen, seventeen, and eighteen);

5.      He is actually innocent of the offenses (grounds five and seven);

6.      Law enforcement used excessive force in violation of his constitutional rights to due process  (ground nine); and

7.      The state erred by withholding mitigating evidence and allowing unauthenticated audio tapes to be heard by the jury (ground thirteen and fifteen).

**E.     RULE 5 STATEMENT**

Quarterman claims Nelson has sufficiently exhausted available state remedies as to only

two of his convictions as required under 28 U.S.C. § 2254(b).  At the time Quarterman filed his

answer, Nelson's sixth state habeas application challenging one of the aggravated assault

convictions was still pending.  The Texas Court of Criminal Appeals denied the application

without written order on July 19, 2006.  *Ex parte Nelson*, Application No. WR-60,848-06, at

cover.  Thus, Nelson has sufficiently exhausted available state remedies as to all three of his

convictions.

## II.  ANALYSIS

### A.  Legal Standard for Granting Habeas Corpus Relief

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a state court shall not be granted with respect to any claim that was

adjudicated on the merits in state court proceedings unless he shows that the prior adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established federal law, or (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the state court.  28 U.S.C. §

2254(d).  A decision is contrary to clearly established federal law if the state court arrives at a

conclusion opposite to that reached by the Supreme Court of the United States on a question of

law or if the state court decides a case differently than the Supreme Court has on a set of

materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also*

*Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  A state court decision will be an

unreasonable application of clearly established federal law if it correctly identifies the applicable

rule but applies it unreasonably to the facts of the case.  *Williams*, 529 U.S. at 407-08.

Further, federal courts give great deference to a state court's factual findings.  *Hill*, 210

F.3d at 485.  Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct.  28 U.S.C. § 2254(e)(1).  The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written opinion, as here, it is an adjudication on the merits that is entitled to this presumption.  *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

**B.  Fourth and Fifth Amendment Claims**

> *1.      No Probable Cause*

Nelson claims that Trooper Cauley had no probable cause to approach his car; thus, the initial stop was illegal under the Fourth Amendment and any and all evidence should have been suppressed (ground one).  (Petition at 7, A5, A11-16).  Where a state affords sufficient opportunity to litigate a Fourth Amendment claim, federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search and seizure.  *See Stone v. Powell*, 428 U.S. 465, 489-95 (1976).  Nelson filed a motion to suppress in each case and the motions were mentioned during a pretrial hearing, but the trial court deferred ruling on the motions until trial.  (2RR at 30).  Because Nelson had an opportunity to reurge the motions during trial, he had a full and fair opportunity to litigate his Fourth Amendment claims in the state courts, and *Stone* bars relitigation of the issues whether or not Nelson took advantage of the opportunity.  *See Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002), *cert. denied*, 537 U.S. 1196 (2003).

### 2. *Forcible Extraction of Urine Sample*

Nelson claims a urine sample was extracted from him forcibly and illegally by medical personnel at the hospital without a warrant or his consent in violation of his rights under the Fourth and Fifth Amendments (ground two). (Petition at 7, A5, A16-18). His Fourth Amendment claim is barred by *Stone*. *Id.* His Fifth Amendment claim is meritless. The Fifth Amendment protects a person from being compelled to testify against himself at trial. *See United States v. Patane*, 542 U.S. 630, 637 (2004). The privilege against self-incrimination protects an accused from being forced to give evidence of a "testimonial or communicative nature," but not from being compelled to produce "real or physical evidence." *Pennsylvania v. Muniz*, 496 U.S. 582, 591-96 (1990). Thus, even though the act may provide incriminating evidence, a criminal suspect may be compelled to provide a urine sample without implicating the Fifth Amendment. *See United States v. Hubbell*, 530 U.S. 27, 35 (2000); *Schmerber v. California*, 384 U.S. 757, 761-765 (1966).

### 3. *Excessive Force*

Nelson also claims the officers' use of excessive force by maliciously choking and beating him while he was in control of a motor vehicle that was running and in gear violated his rights under the Due Process Clause (ground nine). (Petition at A8, A25). When an excessive force claim arises in the context of an arrest for investigatory stop of a free citizen, it is more properly characterized as invoking protections of Fourth Amendment rights to be secure against unreasonable searches and seizures rather than violations of the citizen's substantive due process rights. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (quoting *Graham v. Connor*, 490 U.S. 386, 384 (1989). As such, the claim is precluded from federal habeas relief under *Stone*. *See*

*Delaney v. Giarrusso*, 633 F.2d 1126, 1128 (5th Cir. 1981).

## C. Perjured Testimony

Nelson claims the state knowingly used, and the trial court erroneously allowed, the perjured testimony of the state's witnesses, and, had the perjured testimony been corrected it would have proved (1) no one put the vehicle into gear, (2) no one saw any reverse lights go out, (3) he and his wife were totally cooperative, (4) nothing was ever in his mouth, (5) he was knocked unconscious and drug by the vehicle, and (6) the law enforcement officers used excessive force (ground three). (Petition at 7, A-5, A-18 through A-19). He further claims the trial court erred by allowing the state to improperly refer to perjured testimony during its closing argument in the guilt/innocence phase (ground 11). (Petition at A8-9).

As to his first claim, Nelson cites to various testimony in the record and seems to imply that his and his wife's testimony alone rendered the conflicting state witnesses' testimony perjurious. To obtain reversal of a conviction based on the state's use of perjured testimony, the habeas petitioner must show: (1) that the witness's testimony was actually false; (2) the testimony was material; and (3) that the prosecution had knowledge that the testimony was false. *See United States v. Scott*, 48 F.3d 1389, 1394 (5th Cir. 1995). Simply because testimony at trial is different does not equate to perjury. *See Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990). It is the jury's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). Thus, conflicting testimony or inconsistencies in the testimony at trial are to be resolved by the jury and do not suffice to establish that certain testimony was perjured. *Koch*, 907 F.2d at 531. In this case, the jury resolved the conflict in favor of the state's witnesses.

Nelson presented no evidence in the state habeas proceedings, nor does he now, to prove his assertions of perjury. Without substantiation in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his pro se petition to be of probative evidentiary value. *See Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983).

Nelson claims the state engaged in improper jury argument during its closing in the punishment phase by characterizing him as a sociopath based on perjured testimony and a false medical diagnosis (ground eleven). (Petition at A-26 through A-28; 7RR at 130-132). During its deliberations, the jury sent out a note inquiring whether Nelson had in fact been diagnosed as a sociopath. *Ex parte Nelson*, Application No. WR-60,848-04, Supp. R., Findings of Fact nos. 7-8. The response agreed to by both parties was "No." Improper jury argument by the state does not present a claim of constitutional magnitude in a federal habeas action unless it is so prejudicial that the state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause. *See Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988)." In Texas, proper jury argument includes: (1) summation of the evidence presented at trial, (2) reasonable deduction drawn from that evidence, (3) answer to the opposing counsel's argument, or (4) plea for law enforcement. *See Felder v. State*, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992). Unflattering characterizations of a defendant do not render a trial fundamentally unfair when such characterizations are supported by the evidence. *United States v. Bell*, 367 F.3d 452, 471 (5th Cir. 2004). Based on Nelson's criminal history and medical history, which included a reference to a drug-induced psychosis, the state habeas court concluded that the record contained at least some evidence supporting the prosecutor's characterization of Nelson as a sociopath, and any harm potentially caused by such characterization was resolved by the court's reply to the

jury's question.  *See United States v. Ivy*,  929 F.2d 147, 153 (5th Cir.), *cert. denied*, 502 U.S. 883 (1991).  The state court's decision is not contrary to federal law on the issue or unreasonable given the jury's relatively lenient sentence.

## D.  Actual Innocence

Nelson claims he is actually innocent of aggravated assault because he was subdued, he did not have control over the vehicle when it accidentally ran over the officers, and Trooper Cauley's testimony proved that he did not pull the gearshift on the vehicle.  (Petition at A7, A19) He claims he is actually innocent of tampering with evidence because he made a false admission to swallowing drugs to protect his wife and because the state failed to prove the elements of the offense as defined by state law (grounds five and seven).  (Petition at A7 through A8, A20-24); *Ex parte Nelson*, Application No. WR-60,848-04, Supp. R., RR of Hrg. at 13-16.  Actual innocence claims are not cognizable on federal habeas review in this circuit.  *See Foster v. Quarterman*, 466 F.3d 359, 367-68 (5th Cir. 2006).  The purpose of federal habeas corpus is "to ensure that individuals are not imprisoned in violation of the Constitution–not to correct errors of fact."  *Herrera v. Collins,* 506 U.S. 390, 399 (1993); *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000).

## E.  Brady Claims

Nelson claims the state improperly (1) provided unauthenticated and duplicate audio tapes to be heard by the jury outside his presence, (2) failed to disclose material exculpatory evidence in the form of video tapes from the officers' squad cars, (3) obtained his convictions by spoilation of evidence, and (4) obtained his convictions based on secrets, surprises, and deceitful tactics (grounds thirteen through sixteen).  (Petition at A9, A28-29).

The elements of a *Brady* prosecutorial misconduct claim are: (1) the evidence at issue must be favorable to the accused, (2) the evidence must have been suppressed by the state, either willfully or inadvertently, and (3) prejudice to the accused ensued. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Nelson claims the state improperly provided four cassette dispatch tapes on which the relevant radio transmissions of the Rockwall County Sheriff's Office and the Texas Department of Public Safety had been duplicated. However, his trial counsel listened to the recordings and stipulated to their authenticity and to their admissibility as a business record prior to their admission into evidence. (5RR at 137) Further, Nelson testified at the state habeas proceeding that he had not listened to the tapes and did not know what was on the tapes or if the recordings would have been favorable to his defense. *Ex parte Nelson*, Application No. WR-60,848-04, Supp. R., RR of Hrg at 7-9. Nelson has not demonstrated a *Brady* violation.

As to his remaining claims, there is no support in the record whatsoever to suggest video tapes existed and were available to the state, or that the state obtained Nelson's convictions through spoilation of evidence, secrets, surprises, or deceitful tactics. A federal court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition. *See Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983). Mere conclusory allegations do not raise a constitutional issue in a habeas proceeding. *Id.*

**F. Ineffective Assistance of Counsel**

In conclusory fashion, Nelson claims he received ineffective assistance of counsel because counsel (1) failed to correct the state witnesses' perjured testimony (ground four), (2) failed to clarify that, if he was subdued, he is actually innocent of the aggravated assault charges (ground six), (3) advised him to plead guilty to the tampering charge when he did not commit the

offense (ground eight), (4) failed to move for an acquittal on grounds of excessive force (ground ten), (5) failed to object to the state's characterization of him as a sociopath (ground twelve), (6) failed to request mitigating evidence in the form of video tape recordings from the officers' squad cars (ground fourteen), (7) failed to object to the use of unauthenticated audio tapes (ground sixteen), and (8) failed to present or develop testimony at trial to support his sole defense of "involuntary act" and request a jury charge on the defense (grounds seventeen and eighteen). (Petition at A6-11; A18- 26).

To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

Where, as here, a petitioner's ineffective assistance claims have been reviewed on the merits under the *Strickland* standard and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of *Strickland*, or if the state courts' decision is based on an unreasonable determination of the facts in light of the evidence before the court. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Pondexter v. Dretke*, 346 F.3d 142, 145-46 (5th Cir. 2003); *Haynes v. Cain*, 298 F.3d 375, 379-82 (5th Cir. 2002). Under this standard, the state court's application of *Strickland* must be

shown to be not only erroneous, but objectively unreasonable. *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003).

After holding an evidentiary hearing on Nelson's claims, the state habeas judge, who also presided over the trial, entered findings of fact refuting at least three of Nelson's allegations of ineffective assistance, and the Texas Court of Criminal Appeals denied habeas relief on all his allegations without written order. *Ex parte Nelson*, Application No. WR-60,848-04, Supp. R. at cover.[2] Nelson has failed to rebut the presumptive correctness of the state habeas court's findings by clear and convincing evidence. To the extent the state court did not make express findings of fact, a federal habeas court may imply fact-findings from the state court's disposition of a federal claim that turns on the factual issue. *Townsend v. Sain*, 372 U.S. 293, 314 (1963)[3]; *Farmer v. Caldwell*, 476 F.2d 22, 24 (5th Cir. 1973); *Dempsey v. Wainwright*, 471 F.2d 604, 606 (5th Cir. 1973). Further, if the state court does not articulate the constitutional standards applied, a federal court may assume that the state court applied correct standards of federal law to the facts in the absence of evidence that an incorrect standard was applied. *Goodwin v. Johnson*, 132 F.3d 162, 183 (5th Cir. 1997), *cert. denied*, 531 U.S. 1120 (2001). Thus, deferring to the express and implied findings, the state courts' adjudication of Nelson's claims was neither erroneous nor objectively unreasonable.

## 1. Failure to Correct Perjured Testimony

Nelson claims counsel was ineffective by failing to correct or clarify perjured testimony by the state's witnesses. (Petition at 8, A6, A18-19). As previously noted, simply because

---

[2]The supplemental record containing the state trial court's findings is not paginated.

[3]The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d). *Harris v. Oliver*, 645 F.2d 327, 330 n.2 (5th Cir. 1981).

testimony at trial is different does not mean testimony is perjurious. *See Koch*, 907 F.2d at 531. Nelson has failed to show that the officers offered perjured testimony. Further, the record reflects counsel cross-examined these witnesses. Nelson's claim is conclusory and fails to establish a valid ineffective assistance of counsel claim. *See Miller v. Johnson*, 200 f.3d 274, 282 (5th Cir. 2000).

### 2. *Failure to Demonstrate Innocence and Advice to Plead Guilty*

Nelson claims counsel was ineffective by failing to clarify that he was actually innocent of the aggravated assault charges if he was subdued and by advising him to lie and plead guilty to tampering with evidence when the state failed to prove the elements of the offense because there was no evidence that he consumed drugs or no baggies found in his body. (Petition at A19-A24). The first claim is conclusory. Moreover, defense counsel elicited testimony from Nelson himself that he lost consciousness at various times during the encounter and emphasized the issue during his closing argument. (6RR at 46).

The second claim was addressed by the state habeas court based on counsel's testimony at the hearing. The court found:

> [A]s part of his trial strategy, defense counsel testified at the habeas hearing that he advised [Nelson] to tell the truth about swallowing the drugs. Believing that lab results would implicate [Nelson], defense counsel advised that being honest with the jury on the less serious charge of tampering with evidence would increase his credibility in the more serious aggravated assault charges. Defense counsel also advised that [Nelson]'s wife, against whom corresponding charges were pending, could also benefit from [Nelson]'s testimony.

*Ex parte Nelson*, Application No. WR-60,848-04, Findings of Fact.

Based on the findings, the state court concluded–

> [Nelson]'s admission at trial that he swallowed drugs in an effort to destroy evidence was done pursuant to the trial strategy and advice of counsel to

tell the truth. There was other evidence that [Nelson] had tampered with the
evidence by swallowing the drugs.

*Id.* Conclusion of Law.

It is clear the state court found counsel's testimony credible and trustworthy. Credibility

determinations by a state court, as well as its factual findings, are presumed correct and afforded

deference, absent clear and convincing evidence to the contrary. *See Coleman v. Quarterman*,

456 F.3d 537, 2006 WL 1991686, at *2 (5th Cir. 2006); *Galvan v. Cockrell*, 293 F.3d 760, 764

(5th Cir. 2002). Moreover, a conscious and informed decision on trial tactics and strategy cannot

be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it

permeates the entire trial with obvious unfairness. *Skinner v. Quarterman*, ___ F.3d ___, 2008

WL 2043036 (5th Cir. May 14, 2008). At the evidentiary hearing, counsel explained that his

trial strategy was to show that Nelson was beaten by the officers to the point of being rendered

unconscious and did not form the intent to put the car in reverse or to run over the officers, to

obtain an acquittal for his wife, and to tell the truth. *Ex parte Nelson*, Application No. WR-

60,848-04, Supp. R, RR at 59-62.

### 3. Failure to Move for Dismissal or Acquittal

Nelson claims counsel was ineffective by failing to move for dismissal or acquittal on

grounds of excessive force. As noted above, this claim implicates a Fourth Amendment

violation. *Rosado*, 5 F.3d at 123. Counsel filed a motion to suppress evidence based, in part, on

the officers' actions, the officers testified to their actions during trial, and counsel emphasized

their conduct during closing argument. (2RR at 30; 3Clerk's R at 74). Nevertheless, a

determination of ineffectiveness depends on whether a petitioner has established a meritorious

Fourth Amendment claim and demonstrated a reasonable probability that the verdict would have

17

been different absent the excludable evidence. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). *See also Ward v. Dretke*, 420 F.3d 479, 488 (5th Cir. 2005), *cert. denied*,547 U.S. 1040 (2006); *Martin v. Maxey*, 98 F.3d 844, 848 (5th Cir. 1996); *Garland v. Maggio*, 717 F.2d 199, 205-206 (5th Cir. 1983) (rejecting petitioner's claim that his counsel was ineffective for failing to file a motion to suppress on grounds that such a motion "would not have been successful [so defendant] suffered no prejudice"). Although there is arguably some good faith basis to support an excessive force claim in this particular case, Nelson cannot show that such a motion raising the claim would have been granted or sustained had it been made in light of the officers' testimony that he was actively resisting them. *See Graham v. Connor*, 490 U.S. 386, 396 (1989).

### 4. *Failure to Object to Characterization*

Nelson claims counsel was ineffective by failing to object to the state's characterization of him as a sociopath. Based on counsel's testimony, the state habeas court found that counsel recalled making an objection but speculated that perhaps he was not heard, and that no prejudice resulted from the state's characterization. *Ex parte Nelson*, Application No. WR-60,848-04, Supp. R., RR at 62-62. Nelson has not demonstrated that the state court's decision is erroneous or objectively unreasonable based on the evidence presented in the state court proceedings. Although there is arguably a good faith basis that counsel should have made his objection heard, no prejudice is evident.

### 5. *Failure to Request or Object to Evidence*

Nelson claims counsel was ineffective by failing to request mitigating evidence in the form of video tape recordings from the officers' squad cars and by failing to object to the jury's consideration of unauthenticated, duplicate audio tapes outside his presence during deliberations.

18

These claims have no factual or legal basis.  As previously noted, there is no evidence or indication in the record that video tape recordings existed.  There is no requirement that the state produce or defense counsel specifically request evidence that does not exist.  Counsel filed pretrial motions for discovery and testified at the evidentiary hearing that the prosecution was "pretty good about letting you know what they have.  They don't hold . . . their cards close to their chest."  *Id.*  Further, the state habeas court found that, "with the possible exception of certain audio exhibits admitted into evidence (thus properly available to the jury for consideration during deliberation), no audio recordings were played for the jury outside [Nelson's] presence."

### 6.      *Failure to Present Evidence of Involuntary Act or Request Jury Charge*

Nelson claims counsel was ineffective by failing to present or develop testimony to support his sole defense of involuntary act and request a jury charge on the issue.  Based on counsel's testimony at the evidentiary hearing, the state habeas court found–

> [D]efense counsel's trial strategy or theory of defense was that [Nelson] had no intent to injure the officers with the vehicle.  Specifically, through cross-examination of the State's witnesses, as well as through direct examination of [Nelson] counsel attempted to show that the car was accidentally placed in reverse during a brief and chaotic struggle with officers during which counsel emphasized that [Nelson] was rendered unconscious, thereby making it impossible for him to possess the requisite intent to commit aggravated assault. . . . Defense counsel did not specifically by name raise the defensive theory of involuntary act, although defense counsel in effect raised the issue by arguing lack of intent due to being unconscious . . . .

Nelson has not demonstrated that the court's determination is erroneous or objectively unreasonable and the findings are supported by the record.  Thus, applying the presumption of correctness, no prejudice ensued.

## G.  Evidentiary Hearing

Nelson requests an evidentiary hearing for purposes of further developing the record to support his claims.  28 U.S.C. § 2254(e)(2).[4]  Nelson has not satisfied his burden under § 2254(e)(2).  Regardless, further development of the record is not necessary in order to assess the claims.  *See Robinson v. Johnson*, 151 F.3d 256, 268 (5th Cir. 1998).  Thus, an evidentiary hearing is not warranted.

## III.  RECOMMENDATION

Nelson's petition for writ of habeas corpus should be DENIED.

SIGNED on this 2nd day of June, 2008.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[4]28 U.S.C. § 2254(e)(2) provides:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–

(A)  the claim relies on–

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE